UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

NORMA CABAN,

     Plaintiff,

                                            10-CV-0559-PAC

v.

RICHLINE GROUP, INC., et al.,

     Defendants.

_____

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

    Plaintiff Norma Caban pursues claims for hostile work environment and retaliation under Title VII and New York Human Rights law, constructive discharge, negligent infliction of emotional distress, negligence and respondeat superior.  Richline Group, Inc., her former employer; Ana Sousa, her former supervisor; and Randy Francis and Padmini Ramashan, her former co-workers, seek summary judgment on all claims.

/ / /

/ / /

/ / /

/ / /

# TABLE OF CONTENTS

**LEGAL STANDARD** ...........................................................................................1

**ARGUMENT** .....................................................................................................1

   **I. SUMMARY JUDGMENT IS APPROPRIATE ON PLAINTIFF'S TITLE VII CLAIMS.** .........................................................................................................1

    1.  Title VII Does Not Provide for Individual Liability. ..................................2

    2.  A Portion of Plaintiffs' Allegations Concerning Sousa and Ramashan Are Time-Barred…….........................................................................................2

    3.  Plaintiff Has Failed to Exhaust Her Administrative Remedies With Regard to Her Allegations Concerning Sousa and Ramashan.............................3

    4.  Plaintiff's Hostile Work Environment Claim Fails Because There Is No Basis to Impute Any Employee Conduct to Richline. .............................4

       *A. Ramashan Is Not a Supervisor for Purposes of Vicarious Liability*.................5

       *B. None of Plaintiff's Allegations Against Sousa Are Actionable.*........................6

       *C. Alternately, Even If Sousa's Conduct Is Actionable, Richline Is Entitled to the Faragher/Ellerth Affirmative Defense.*................................................7

       *D. Plaintiff Has Failed to Establish Richline's Responsibility for the Conduct of Her Co-workers*.........................................................................9

    5.  Plaintiff Failed to Exhaust Administrative Remedies Regarding Her Retaliation Claim. .................................................................................12

    6.  Alternately, Plaintiff's Retaliation Claim Fails Because She Cannot Establish a Prima Facie Case, Nor Can She Establish Pretext..........................12

       *A. Plaintiff Cannot Establish that She Opposed an Unlawful Employment Practice Perpetrated by Richline.*...............................................................13

       *B. Plaintiff Cannot Establish That She Suffered an Adverse Employment Action.*14

       *C. Plaintiff Cannot Establish Causation.*................................................15

       *D. Plaintiff Cannot Establish Pretext.*..................................................16

**II.  SUMMARY JUDGMENT IS APPROPRIATE ON PLAINTIFF'S CLAIMS UNDER NEW YORK HUMAN RIGHTS LAW (EXECUTIVE LAW § 296).....16**

1.  The Individual Defendants Are Not Directly Liable Under § 296 Because They Do Not Have an Ownership Interest, Nor Do They Have the Power to Carry Out Personnel Decisions. ..............................................................................17

2.  Plaintiff Cannot Establish Richline's or Sousa's Liability Under § 296 Because She Lacks Evidence That They Condoned Harassing or Retaliatory Conduct...............18

3.  Plaintiff's Retaliation Claim Fails on the Merits. ....................................19

4.  Plaintiff Cannot Pursue Claims for Aiding and Abetting Because There Is No Basis for Employer Liability Under § 296........................................................20

**III.  SUMMARY JUDGMENT IS APPROPRIATE ON PLAINTIFF'S CLAIM FOR CONSTRUCTIVE DISCHARGE. ...........................................................20**

**IV.  SUMMARY JUDGMENT IS APPROPRIATE ON PLAINTIFF'S STATE LAW CLAIMS FOR NEGLIGENCE AND RESPONDEAT SUPERIOR. ...................21**

1.  Plaintiff's Negligent Infliction of Emotional Distress Claim Fails Because She Cannot Establish That Defendants Owed Her a Direct Duty or That They Placed Her in Risk of Physical Harm. ...............................................................21

2.  Plaintiff Has Not Properly Alleged a Claim for Negligence....................................23

3.  Richline Is Not Liable Under Respondeat Superior Because Plaintiff Has Failed to Establish That the Individual Defendants Engaged in Tortious Conduct, or That Their Conduct Was Within the Scope of Employment.............................................23

**CONCLUSION ........................................................................................24**

## LEGAL STANDARD

Summary judgment is appropriate when, construing the evidence in the light most favorable to the non-moving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A fact is "material" when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, sufficient evidence must exist upon which a "reasonable jury" could return a verdict for the non-moving party. *Anderson,* 477 U.S. at 247. Thus, "even in the discrimination context, a plaintiff must prove more than conclusory allegations of discrimination to defeat a motion for summary judgment." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997).

## ARGUMENT

## I.    SUMMARY JUDGMENT IS APPROPRIATE ON PLAINTIFF'S TITLE VII CLAIMS.

Plaintiff pursues hostile work environment and retaliation claims under Title VII.  As set forth below, the undisputed facts demonstrate that summary judgment is appropriate on both claims, which comprise Plaintiff's First and Second Causes of Action.

**1.    Title VII Does Not Provide for Individual Liability.**

Individuals, including individuals with supervisory control over the plaintiff, are not subject to personal liability under Title VII. *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) (citations omitted). Here, is not clear from the Complaint whether Plaintiff pursues Title VII claims against Francis, Sousa and Ramashan. If she does pursue Title VII claims against them, summary judgment is appropriate on those claims. *See id.*

**2.    A Portion of Plaintiffs' Allegations Concerning Sousa and Ramashan Are Time-Barred.**

A person seeking relief under Title VII must first file a charge with the EEOC or with the relevant state or local administrative agency. 42 U.S.C. § 2000e-5(b), (f). If the claimant has already filed the charge with a state or local agency, The claimant must file a charge with the EEOC within 300 days of the alleged act of discrimination. *See* 42 U.S.C. § 2000e-5(e)(1). Incidents not timely charged before the EEOC are "time-barred upon the plaintiff's suit in district court." *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 765 (2d Cir. 1998). Moreover, "a sexually offensive incident within the limitations period permits consideration of an incident preceding the limitations period only if the incidents are sufficiently related." *McGullam v. Cedar Graphics*, Inc., 609 F.3d 70, 77 (2d Cir. 2010) (citation omitted). Courts determine whether incidents are related based in part on their nature, frequency and severity. *Id.* at 78.

Here, although Plaintiff alleges that, Sousa and Ramashan's misconduct commenced in June 2005, she did not file a complaint with the New York Division of Human Rights until several years later, in 2008. (Concise Stmt ¶ 17, 39). Moreover, the complaint focused solely on Francis' conduct in early 2008. (Concise Stmt ¶ 39). Francis joined the company in 2007.

(Concise Stmt ¶ 7). It is difficult to see how Plaintiffs' complaint about Francis relates to her allegation that a female supervisor and co-worker in her department asked her personal questions of a sexual nature long before Francis was employed at Richline. Thus, the alleged incidents involving Sousa and/or Ramashan that occurred more than 300 days prior to Plaintiff's 2008 administrative complaint are time-barred under Title VII.

     **3.**     **Plaintiff Has Failed to Exhaust Her Administrative Remedies With Regard to Her Allegations Concerning Sousa and Ramashan.**

"The federal courts generally have no jurisdiction to hear claims not alleged in an employee's EEOC charge." *Shah v. New York State Dep't of Civ. Serv.,* 168 F.3d 610, 613 (2d Cir. 1999). A court, however, may consider claims to the extent that they are "reasonably related" to claims that the plaintiff asserted in a timely EEOC charge. *Id.* A claim is reasonably related to an EEOC charge only if the conduct complained of would reasonably fall within the scope of the EEOC investigation. *Mathirampuzha v. Potter*, 548 F.3d 70, 76 (2d Cir. 2008).

     In *Mathirampuzha*, for example, the court upheld summary judgment for the defendant on the plaintiff's retaliation claim because the plaintiff's EEOC charge did not allege or imply that the incident complained of was the result of a retaliatory motive. *Id.; see also Fitzgerald v. Henderson*, 251 F.3d 345, 351, 366 (2d Cir. 2001) (upholding grant of defendant's motion for summary judgment on plaintiff's retaliation claim in part because her EEOC charge did not allege that the unlawful conduct was in response to her threat to file an administrative complaint). Similarly, in *Alfano v. Costello*, the court upheld the district court's finding that the plaintiff had not exhausted administrative remedies for her claim that she suffered unwarranted discipline because her EEOC complaint did not include allegations concerning disciplinary

action. 294 F.3d 365, 381-382 (2d Cir. 2002).

Here, Plaintiff's allegations concerning Sousa and Ramashan are not reasonably related to the charges in her EEOC complaint. Although Plaintiff alleges that, since June 2005, Sousa and Ramashan asked her personal questions of a sexual nature (Concise Stmt ¶ 17), the EEOC complaint focused solely on Francis' alleged harassing conduct. (Concise Stmt ¶ 39-40). The investigation into whether Francis had sexually harassed Plaintiff would not reasonably encompass an inquiry into whether the Plaintiff's female co-workers had asked her personal questions before Francis even joined the company. Moreover, while Plaintiff also alleges that, starting in March 2008, Ramashan engaged in retaliatory conduct (Concise Stmt ¶ 34), her May 2008 EEOC complaint made no mention of retaliation by Ramashan. (Concise Stmt ¶ 39-40). The EEOC had no reason to inquire into those prior events. Additionally, Plaintiff testified that she suffered no retaliation for filing the EEOC complaint. (Concise Stmt ¶ 41). Thus, Plaintiff has failed to exhaust administrative remedies with regard to the conduct of Sousa and Ramashan.

### 4. Plaintiff's Hostile Work Environment Claim Fails Because There Is No Basis to Impute Any Employee Conduct to Richline.

A plaintiff seeking to prevail on a hostile work environment claim must establish two elements: (1) a hostile work environment; and (2) a specific basis for imputing the harassing conduct to the employer. *Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93, 103 (2d Cir. 2010). "[A] plaintiff can impute conduct that creates a hostile work environment to the employer in different ways depending on whether the conduct was carried out by the plaintiff's supervisor or by non-supervisory co-workers." *Fairbrother v. Morrison*, 412 F.3d 39, 52 (2d Cir. 2005). Where a plaintiff alleges conduct by both her supervisor and her co-workers, "courts analyze

whether employer liability can be established under either test." *Id.* (citations omitted). Here, assuming (without conceding) that Plaintiff's allegations are sufficient to establish the first element of her hostile work environment claim, summary judgment is nonetheless appropriate because no basis exists to impute the conduct at issue to Richline.

### A.     Ramashan Is Not a Supervisor for Purposes of Vicarious Liability.

"The starting point for analyzing employer vicarious liability in a Title VII hostile work environment action is to determine whether the person who allegedly created that environment is properly characterized as having been the plaintiff's supervisor." *Mack v. Otis Elevator Co.*, 326 F.3d 116, 123 (2d Cir. 2003). An employer is subject to vicarious liability "'only when a supervisor with immediate (or successively higher) authority over the employee has engaged in the complained of conduct." *Id.* (citation omitted). The Second Circuit defines "supervisor" as either someone with authority to direct the daily activities of an employee or to "undertake or recommend tangible employment decisions affecting the employee." *Id.* at 127.

Here, Ramashan does not meet the definition of a supervisor for vicarious liability purposes. Although Ramashan oversaw the Sample Line Department in Sousa's absence (Concise Stmt ¶ 6), nothing suggests that she had the authority to direct Caban's activities on a daily basis.  Moreover, Ramashan did not have the power to make employment decisions affecting Caban. *Id.* Therefore, Ramashan's alleged conduct does not bestow vicarious liability on Richline. Rather, to the extent that the Court finds that Caban has exhausted administrative remedies with regard to her allegations concerning Ramashan, the Court should analyze Ramashan's conduct as that of a co-worker, not a supervisor.

### B.    None of Plaintiff's Allegations Against Sousa Are Actionable.

Plaintiff cannot impute Sousa's conduct to Richline because she has failed to present evidence that Sousa engaged in any actionable conduct. As explained above, Plaintiff failed to exhaust her administrative remedies for her allegations against Sousa. Additionally, plaintiff alleges that Sousa, a woman, asked her personal questions about her sex life but fails to explain how this constituted gender discrimination. Courts may consider "facially neutral incidents" among the "totality of the circumstances" in a hostile work environment claim only if "a reasonable fact-finder could conclude that they were, in fact, based on sex." *Alfano*, 294 F.3d at 378. "This requires some circumstantial or other basis for inferring that incidents sex-neutral on their face were in fact discriminatory." *Id.* Plaintiff lacks such evidence and thus has failed to establish that Sousa's alleged conduct constituted gender-based discrimination.

Plaintiff's only arguably remaining allegation concerning Sousa is that she failed to respond to Plaintiff's complaints concerning Francis. As the Second Circuit recently noted, however, "[F]ederal courts (including district courts in this circuit) appear to have uniformly rejected the notion that a failure adequately to remediate sexual harassment itself constitutes an act that may contribute to a hostile work environment claim." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 724 (2d Cir. 2010) (quoting *Chan v. N.Y. City Transit Auth.*, No. 03 Civ. 6239, 2004 WL 1812818, at *5, 2004 U.S. Dist. LEXIS 16370, at *15 (E.D.N.Y. July 19, 2004). Thus, Sousa's alleged misconduct is not relevant to Plaintiff's hostile work environment claim.

### C.   Alternately, Even If Sousa's Conduct Is Actionable, Richline Is Entitled to the *Faragher/Ellerth* Affirmative Defense.

When the alleged harasser is in a supervisory position over the plaintiff, courts automatically impute the objectionable conduct to the employer. *Gorzynski*, 596 F.3d at 103 (citations omitted). The employer, however, may raise an affirmative defense "if either (1) the supervisor took no 'tangible employment action,' which involves an official company act, against the employee; or (2) any tangible employment action . . . was not part of the supervisor's discriminatory harassment." *Id*. at 104 n.3 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998), *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998)). In other words, "employers are barred from raising the affirmative defense only when 'the supervisor's harassment culminates in a tangible employment action.'" *Ferraro v. Kellwood Co.*, 440 F.3d 96, 101-102 (2d Cir. 2006).

Here, Richline is entitled to the *Faragher/Ellerth* defense.  Plaintiff does not allege that Sousa ever took any tangible employment action against her. Moreover, there is no evidence to suggest that Sousa's alleged harassment, which allegedly commenced in 2005 and was never mentioned in Plaintiff's written complaints to human resources or her administrative complaint, culminated in Richline's decision to lay off Plaintiff three years later, in September 2008. (Concise Stmt ¶ 40, 44-45).

The *Faragher/Ellerth* affirmative defense is comprised of two elements: 1) that the employer exercised reasonable care to prevent and promptly correct any sexually harassing behavior; and 2) that the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to otherwise avoid harm. *Gorzynski*, 596

F.3d at 103 (citations omitted). Under the first prong, "the existence of an anti-harassment policy with complaint procedures is an important consideration." *Leopold v. Baccarat, Inc.*, 239 F.3d 243, 245 (2d Cir. 2001) (citation omitted). Thus, in *Leopold*, the court held that the defendant had established the first element of the defense because it had an appropriate anti-harassment policy. *Id.* Here, like the employer in *Leopold*, Richline can establish the first prong of the defense because the undisputed evidence shows that it had an anti-harassment policy, a procedure for filing complaints, and shared this information with employees, including Plaintiff. (Concise Stmt ¶ 10-16).

Under the second element of the *Faragher/Ellerth* defense, an employer must demonstrate that an employee has failed to avail herself of the complaint procedures. *Leopold*, 239 F.3d at 246. Once the employer meets this burden, "the burden of production shifts to the employee to come forward with one or more reasons why the employee did not make use of the procedures." *Id.* Thus, "in some instances, it may be unreasonable for a victim of harassment to complain only to the harasser because . . . there are other channels that are . . . accessible and open." *Gorzynski*, 595 F.3d at 105 (question of fact remained as to whether plaintiff unreasonably complained only to the harassing supervisor because she presented evidence that other complaint channels were "ineffective or even threatening"); *see also Leopold,* 239 F.3d at 246 (plaintiff's "subjective belief" was insufficient to establish a credible fear that her complaint would not be taken seriously or that she would suffer some adverse employment action if she complained).

Here, Plaintiff was aware that Richline had a sexual harassment complaint procedure and

how to avail herself of that procedure. (Concise Stmt ¶ 13-15). The procedure encouraged employees who have questions or problems to inform their immediate supervisor of the problem, unless the supervisor was central to the problem, in which case the procedure directed employees to contact the next level of management. (Concise Stmt ¶ 11). Plaintiff avers that Sousa began harassing her in June 2005. (Concise Stmt ¶ 17). Plaintiff, however, spoke only to Sousa about the situation. *Id.* Plaintiff's human resources complaints focused solely on Francis and Ramashan's alleged harassment. (Concise Stmt ¶ 19, 20, 36, 38, 42, 43, 47). In addition, because Richline promptly investigated and took action on Plaintiff's March 2008 complaint regarding Francis (Concise Stmt ¶ 22-29, 31-32), Plaintiff cannot reasonably claim that Richline would be unreceptive to a complaint about Sousa. Thus, even if the court finds the allegations concerning Sousa are actionable, Richline is entitled to an affirmative defense because Plaintiff failed to use the complaint procedures available to her to address Sousa's alleged harassment.

### D. Plaintiff Has Failed to Establish Richline's Responsibility for the Conduct of Her Co-workers.

Where the plaintiff alleges harassment by a co-worker as the basis for a hostile work environment claim, the employer will be liable only if it "failed to provide a reasonable avenue for complaint or knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action." *Fairbrother*, 412 F.3d at 52 (citation omitted). Courts look to an employer's promptness and the seriousness with which it treated the plaintiff's complaint to determine whether the employer took appropriate remedial action. *See Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 763-764, 767-768 (2d Cir. 1998) (upholding grant of defendant's motion for summary judgment where facts showed that employer promptly

investigated plaintiff's allegations of harassment); *see also Fairbrother*, 412 F.3d at 52 (summary judgment inappropriate where plaintiff testified that employer waited several months before taking action on her complaints and response consisted only of a series of staff meetings).

Here, the undisputed facts demonstrate that Richline both provided a reasonable avenue for complaint and promptly and appropriately responded to Plaintiff's complaints concerning Francis. As noted above, Richline had a sexual harassment policy and complaint procedure and shared this information with its employees. (Concise Stmt ¶ 10-16).  Plaintiff waited until mid-March 2008 before she complained to human resources concerning Francis, despite that her allegations concerned incidents that took place over a month earlier, in January or February 2008. (Concise Stmt ¶ 19-20). Richline immediately investigated Plaintiff's complaint and was unable to corroborate her story, despite interviewing the witnesses she identified. (Concise Stmt at ¶ 27-28, 31-32). Richline, however, took appropriate remedial action when it told Francis to stay away from Plaintiff and disciplined Francis with a written reprimand because he admitted to moving Plaintiff's hand away from the television. (Concise Stmt ¶ 22-24, 29).

Moreover, Richline promptly responded to Plaintiff's subsequent human resources complaints concerning Francis, even though none of them indicated that Francis had sexually harassed her. (Concise Stmt 38, 42, 47). Specifically, Plaintiff complained that she had seen Francis in the hallway or other places in the building. *Id.* Human resources investigated each complaint, including questioning Francis and looking at security tapes if they were available, and warned Francis to stay away from Caban. *Id.* Thus, there is no evidence to suggest that Richline failed to take remedial action after it knew or should have known that Francis had harassed

Plaintiff. *See Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 715 (2d Cir. 1996) (upholding grant of summary judgment to employer in part because a supervisor's knowledge that an employee was "disruptive" was not evidence that she knew of his sexually harassing behavior).

Plaintiff has likewise failed to present evidence to impute Ramashan's conduct to Richline. Plaintiff complained to human resources about Ramashan on May 7, 2008, stating that Ramashan had called her an offensive name, teased her about Randy, put a chair in her way, made loud sounds and was sarcastic. (Concise Stmt ¶ 36). Sousa, who supervised both Plaintiff and Ramashan, met with Ramashan, who denied Plaintiff's allegations. (Concise Stmt ¶ 35). Sousa, however, reprimanded Ramashan for teasing Caban and documented it in a written report. (Concise Stmt ¶ 37). Thus, the evidence shows that, at most, Richline knew that Plaintiff's immediate supervisor promptly investigated Plaintiff's complaint concerning Ramashan, was unable to corroborate Plaintiff's story, but nonetheless issued a warning to Ramashan. No evidence shows that Richline knew or should have known that Ramashan had subjected Plaintiff to harassment.

Plaintiff may, however, assert that there is a basis to impute Francis' and Ramashan's conduct to Richline because Sousa, her supervisor, was aware of harassing conduct and took no action. Assuming (without conceding) that Plaintiff has evidence to establish Sousa knew about harassment by Francis and Ramashan before March 2008, a supervisor must be "at a sufficiently high level in the hierarchy" before a court will impute the supervisor's knowledge to the company. *Van Zant*, 80 F.3d at 715 (a supervisor of data communications technicians was "too low in the hierarchy to properly qualify as a proxy for the company"). Sousa merely oversaw two

or three employees. (Concise Stmt ¶ 3). She reports to Linda Levin, the director of product

development. (Concise Stmt ¶ 3-4). Levin reports to a vice-president, who, in turn, answers to

the company president. (Concise Stmt ¶ 4). Thus, Sousa served as a low-level supervisor, many

steps down the company hierarchy. As a result, her alleged knowledge of the harassment cannot

be imputed to Richline.

### 5. Plaintiff Failed to Exhaust Administrative Remedies Regarding Her Retaliation Claim.

As noted above, "[t]he federal courts generally have no jurisdiction to hear claims not

alleged in an employee's EEOC charge." *Shah,* 168 F.3d at 613. Plaintiff's EEOC complaint did

not mention any retaliatory conduct, although that conduct allegedly occurred before she filed

the complaint. (Concise Stmt ¶ 34, 36, 39-40). Plaintiff testified that Ramashan's retaliation

commenced in March 2008 and that Ramashan's conduct was the only retaliation that occurred.

(Concise Stmt ¶ 34). Plaintiff's May 2008 EEOC complaint, however, made no mention of

Ramashan or retaliation. (Concise Stmt ¶ 39-40). Plaintiff further stated that no retaliation took

place after she filed her EEOC complaint. (Concise Stmt ¶ 41). Thus, Plaintiff has failed to

exhaust administrative remedies with regard to her retaliation claim.

### 6. Alternately, Plaintiff's Retaliation Claim Fails Because She Cannot Establish a Prima Facie Case, Nor Can She Establish Pretext.

Courts apply the *McDonnell Douglas* burden-shifting framework to retaliation claims.

*See, e.g., Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010) (citing *McDonnell

Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973)). A plaintiff seeking to establish a prima

facie retaliation claim must show: 1) that she participated in an activity protected by Title VII; 2)

that her employer knew of her participation; 3) that her employer thereafter subjected her to a

materially adverse employment action; and 4) that there was a causal connection between the protected activity and the adverse employment action. *Id*. If the plaintiff has evidence to support a prima facie case, the burden of production shifts to the defendant to proffer a legitimate non-retaliatory reason for the adverse employment action. *Id*. at 552-553. If the defendant produces such evidence, the plaintiff must point to evidence that the employer's proffered non-retaliatory reason is pretextual. *Id*.

> **A.    Plaintiff Cannot Establish that She Opposed an Unlawful Employment Practice Perpetrated by Richline.**

"Not every act by an employee in opposition to . . . discrimination is protected. The opposition must be directed at an unlawful employment practice *of an employer*, not an act of discrimination by a private individual." *Wimmer v. Suffolk County Police Dep't*, 176 F.3d 125, 135 (2d Cir. 1999) (citation omitted) (emphasis added); *Braham v. New York Unified Court Sys*., No. 9402193, 1998 U.S. Dist. LEXIS 2785, at *10 (S.D.N.Y. Mar. 6, 1998) (citation omitted) (plaintiff failed to make out a prima facie case of retaliation because her protected activity was that she complained about remarks by her co-workers that she could not attribute to her employer). Moreover, "the plaintiff must demonstrate a "good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *Manoharan v. Columbia Univ. College of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988).

Here, even if Plaintiff has exhausted administrative remedies on her retaliation claim, the claim fails because she cannot establish the first element of her prima facie case.  First, Plaintiff testified that Ramashan's conduct was the only act of retaliation that occurred (Concise Stmt ¶ 34) but has no basis to attribute Ramashan's alleged conduct to Richline, for the reasons

discussed in Part I.4.D, above. Second, Plaintiff testified that she suffered no retaliation as a result of her EEOC complaint (Concise Stmt ¶ 41) and thus her retaliation claims rely on her complaints to human resources and to the compliance hotline, none of which describe any unlawful conduct by Richline. (Concise Stmt ¶ 19, 25, 36, 38, 42-43, 47). Rather, her complaints focused solely on co-workers (Francis and Ramashan), and her May 20, June 11 and September 8, 2008 complaints did not even concern conduct that constitutes sexual harassment. *Id.* Thus, Plaintiff's retaliation claim fails because she cannot establish that she opposed an unlawful employment practice by Richline.

> **B.    Plaintiff Cannot Establish That She Suffered an Adverse Employment Action.**

Additionally, a plaintiff seeking to establish the "adverse employment action" element of a retaliation claim must present evidence that the challenged action was "materially adverse," which means "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington North. & Sante Fe. Ry. Co. v. White*, 548 U. S. 53, 68 (2006). "Title VII . . . does not set forth 'a general civility code for the American workplace.'" *Id.* Thus, "[n]ormally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Id.* (citation omitted). Moreover, "the provision's standard for judging harm must be objective" in order to "the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings." *Id.* at 69.

Here, Plaintiff cannot establish that she suffered an adverse employment action.  As noted above, Plaintiff testified that Ramashan's conduct comprised the only acts of retaliation that occurred. (Concise Stmt ¶ 34). Plaintiff, however, merely claims that Ramashan called her

names, teased her about Francis, and was sometimes rude. (Concise Stmt ¶ 34-36). That conduct does not amount to more than a minor annoyance and thus cannot serve as the basis for Plaintiff's retaliation claim.

### C.      Plaintiff Cannot Establish Causation.

Finally, a plaintiff seeking to establish a prima facie case of retaliation must present evidence of causation. "[P]roof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence . . .  or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. New York City Bd. of Educ.,* 232 F.3d 111, 117 (2d Cir. 2000).

Here, even if Plaintiff now contradicts her testimony and states that being laid off constituted an act of retaliation, she still cannot establish a prima facie case because she has no evidence of a causal connection between her complaints and Richline's decision to lay her off. Plaintiff cannot rely on temporal proximity. Richline did not receive Plaintiff's final written complaint until after it decided to lay her off, and investigated even that complaint. (Concise Stmt ¶ 47). Thus, when Richline decided to lay Plaintiff off in September 2008, it had not received a complaint from Plaintiff since she called the compliance hotline in June, and even that call merely reiterated her previous complaints. (Concise Stmt ¶ 43, 44). Moreover, Plaintiff lacks direct evidence of any retaliatory animus. As a result, Plaintiff cannot establish that her complaints were causally related to her termination.

D.      **Plaintiff Cannot Establish Pretext.**

As noted above, once the defendant proffers a legitimate reason for an adverse

employment action, the plaintiff must present some evidence of pretext. *Kaytor*, 609 F.3d at 553-

554. On summary judgment, the plaintiff must "show that an issue of fact exists as to whether a

retaliatory motive *played a part* in the adverse employment actions." *Richardson v. Comm'n on*

*Human Rights & Opportunities*, 532 F.3d 114, 126 (2d Cir. 2008) (upholding grant of

defendant's motion for summary judgment where plaintiff's broad allegations of retaliation were

unsubstantiated by any evidence). In other words, the plaintiff must present evidence that "a

retaliatory  motive is a 'but for' cause of the adverse employment action." *Manoharan v.*

*Columbia Univ. College of Physicians & Surgeons*, 842 F.2d 590, 594-595 (2d Cir. 1988).


Here, Richline has proffered a legitimate non-discriminatory reason for Plaintiff's

termination; it laid her off as part of a workforce reduction. (Concise Stmt ¶ 44). The testimony

shows that Plaintiff was laid off due to budget and company staffing needs and that she was not

the only Richline employee who was laid off. *Id.* Accordingly, even if the Court reaches the

merits of Plaintiff's retaliation claim, and finds that Plaintiff has presented sufficient evidence to

establish a prima facie case, summary judgment is nonetheless appropriate on that claim because

Plaintiff cannot establish pretext.

II.     **SUMMARY JUDGMENT IS APPROPRIATE ON PLAINTIFF'S CLAIMS**
        **UNDER NEW YORK HUMAN RIGHTS LAW (EXECUTIVE LAW § 296).**

Plaintiff pursues claims under Executive Law § 296 for hostile work environment,

retaliation and aiding and abetting discriminatory conduct.  As set forth below, summary

judgment is appropriate on all these claims, which comprise Plaintiff's Third, Fourth and Sixth

Causes of Action.

     **1.    The Individual Defendants Are Not Directly Liable Under § 296 Because They Do Not Have an Ownership Interest, Nor Do They Have the Power to Carry Out Personnel Decisions.**

     An individual supervisor is not liable as an "employer" under New York's Human Rights Law unless he or she: 1) has an ownership interest in the employer company; or 2) has the power to do more than carry out personnel decisions made by others. *Patrowich v. Chemical Bank*, 473 N.E.2d 11, 12, 63 N.Y.2d 541, 483 N.Y.S.2d 659 (1984).[1] Under the second prong, courts consider "whether the individual (1) had the power to hire or fire employees, (2) supervised and controlled employee work schedules or employment conditions, (3) determined the rate and methods of payment, and (4) maintained employment records." *Maher v. Alliance Mortg. Banking Corp.*, 650 F. Supp. 2d 249, 260 (E.D.N.Y. 2009) (citation omitted) (plaintiff failed to establish individual defendant's liability as an employer because she did not present evidence that he had the authority to fire her or to control her schedule or to determine her salary); *see also Ross v. Mitsui Fudosan, Inc.*, 2 F. Supp. 2d 522, 529 (S.D.N.Y. 1998) (plaintiff failed to state a § 296(1) claim against a defendant because she did not allege that he had an ownership interest or the power to fire her).

     Here, none of the individual defendants meet the requirements for liability as an employer/principal under New York's Human Rights Law.  The undisputed evidence shows that

---

[1]     This broad reading of the *Patrowich* holding has recently come under question in the lower New York appellate court. *Kaiser v Raoul's Rest. Corp.*, 72 A.D.3d 539, 541, 899 N.Y.S.2d 210 (2010). In *Kaiser*, the court explained that the *Patrowich* holding could be read more narrowly because the *Patrowich* court "necessarily decided" only that the definition of "employer" under New York's Human Rights Law is not broader than the definition of that term under the federal Equal Pay Act and Age Discrimination Act. *Id.* (citations omitted). Thus, a narrow reading of *Patrowich* suggests that an ownership interest or the power to make personnel decisions is necessary, but not sufficient, for employer liability. *Id.*

none of the individual defendants had or have an ownership interest in Richline. (Concise Stmt ¶ 4, 6, 7). Moreover, no evidence suggests that Francis or Ramashan had the power to make personnel decisions. (Concise Stmt ¶ 6, 7). Additionally, while Sousa is a somewhat closer case in that she participated in hiring and firing decisions, nothing suggests she had unilateral authority to hire or fire Plaintiff, or that she determined Plaintiff's salary or maintained her employment records. (Concise Stmt ¶ 4). Thus, summary judgment is appropriate for Plaintiff's claims under Executive Law § 296 to the extent that she asserts that the individual defendants are liable as principals/employers.

> **2.     Plaintiff Cannot Establish Richline's or Sousa's Liability Under § 296 Because She Lacks Evidence That They Condoned Harassing or Retaliatory Conduct.**

Under Executive Law § 296, an employer is not guilty of discrimination "whenever any employee at any level commits . . . a disapproved and unanticipated discriminatory act." *Totem Taxi, Inc. v. New York State Human Rights Appeal Bd.,* 65 N.Y.2d 300, 491 N.Y.S.2d 293, 296, 480 N.E.2d 1075 (1985). Rather, an employer is liable for an employee's discriminatory act only if the employer became a party to it by "encouraging, condoning, or approving it." *State Div. Of Human Rights v. St. Elizabeth's Hosp.*, 66 N.Y.2d 684, 687, 487 N.E.2d 268 (1985). "Condonation . . . contemplates a knowing, after-the-fact forgiveness or acceptance of an offense." *Id.* Thus, "[c]ondonation may be disproved by a showing that the employer reasonably investigated a complaint of discriminatory conduct and took corrective action." *Father Belle Community Center v. New York State Div. of Human Rights*, 642 N.Y.S.2d 739, 746, 221 A.D.2d 44 (1996). Moreover, if a plaintiff alleges harassment by a "low-level supervisor" or a co-worker, she must establish "that upper-level supervisors had knowledge of the conduct and

ignored it." *Id.* at 747.

Here, even if Plaintiff can show that Sousa meets the definition of employer under New York's Human Rights Law, she cannot establish employer liability because neither Sousa nor Richline condoned or participated in discriminatory conduct. As described above, Richline has an anti-harassment policy, which also specifically forbids retaliation, and a procedure for filing complaints. (Concise Stmt ¶ 10-16). When Plaintiff came to Sousa with her complaint about Francis, it prompted an immediate investigation by human resources and resulted in disciplinary action against Francis. (Concise Stmt ¶ 22-29). Moreover, either human resources or Sousa investigated every subsequent complaint that Plaintiff submitted and responded appropriately, even when those complaints did not address harassing conduct. (Concise Stmt ¶ 36-38, 42, 47). Finally, although Plaintiff alleges that Sousa directly harassed her by asking her personal questions about her sex life (Concise Stmt ¶ 17), nothing indicates that this conduct constituted gender-based discrimination. *See* Part 1.4.B, *supra*. Thus, summary judgment is appropriate for Plaintiff's harassment and retaliation claims under Executive Law § 296 because she has not presented sufficient evidence to establish employer liability.

### 3.    Plaintiff's Retaliation Claim Fails on the Merits.

The merits of retaliation claims under the New York Human Rights Law "are generally governed by the same standards as federal claims under Title VII." *Schiano v. Quality Payroll Systems, Inc.*, 445 F.3d 597, 609 (2d Cir. 2006). Thus, even if Plaintiff could establish a basis for liability on her § 296 retaliation claim, that claim nonetheless fails because she cannot establish a prima facie case, for the same reasons (discussed in Part I.6 above) that she cannot establish a prima facie case for her Title VII retaliation claim.

4.      **Plaintiff Cannot Pursue Claims for Aiding and Abetting Because There Is No Basis for Employer Liability Under § 296.**

Accessorial liability as an alleged aider and abettor under New York's Human Rights Law does not apply unless liability is first "established as to the employer/principal." *DeWitt v. Lieberman*, 48 F. Supp. 2d 280, 293 (S.D.N.Y. 1999) (quoting *Murphy v. ERA United Realty*, 674 N.Y.S.2d 415, 417 (2nd Dep't 1998)). In other words, "It is the employer's participation in the discriminatory practice which serves as the predicate for the imposition of liability on others for aiding and abetting." *Id.; see also Strauss v. State Dept. of Educ.*, 26 A.D.3d 67, 73, 805 N.Y.S.2d 704 (2005)).  Here, as described above, Plaintiff cannot establish employer/principal liability under New York's Human Rights Law § 296. Thus, she has no basis for pursuing aiding and abetting liability against the individual defendants under § 296(6).

III.    **SUMMARY JUDGMENT IS APPROPRIATE ON PLAINTIFF'S CLAIM FOR CONSTRUCTIVE DISCHARGE.**

"Constructive discharge of an employee occurs when an employer . . . intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily." *Whidbee v. Garzarelli Food Specialties,* 223 F.3d 62, 73 (2d Cir. 1999) (citations omitted). Here, Plaintiff cannot show that she was forced to resign because she testified that, when she was terminated from Richline in September 2008, she had no intention of quitting or leaving the company. (Concise Stmt ¶ 46). Plaintiff's pre-motion letter to Judge Engelmayer accordingly concedes her constructive discharge claim. *Id.* Therefore, summary judgment is appropriate on Plaintiff's constructive discharge claim, which comprises her Fifth Cause of Action.

**IV.    SUMMARY JUDGMENT IS APPROPRIATE ON PLAINTIFF'S STATE LAW CLAIMS FOR NEGLIGENCE AND RESPONDEAT SUPERIOR.**

Plaintiff pursues state law claims for negligence, negligent infliction of emotional distress and respondeat superior.  As set forth more fully below, summary judgment is appropriate on Plaintiff's Eighth and Ninth Causes of Action. Plaintiff has not clearly pled her negligence claim (Seventh Cause of Action), and Defendants therefore intend to address it in their Reply.

**1.    Plaintiff's Negligent Infliction of Emotional Distress Claim Fails Because She Cannot Establish That Defendants Owed Her a Direct Duty or That They Placed Her in Risk of Physical Harm.**

When a plaintiff suffers a purely emotional harm, "[t]he circumstances under which recovery may be had . . . are extremely limited." *Lancellotti v. Howard*, 547 N.Y.S.2d 654, 655, 155 A.D.2d 588 (1989) (plaintiff's claim that her doctor erroneously advised her that she was pregnant and continued to treat her for seven months was insufficient to survive summary judgment on her NIED claim). Under New York law, a plaintiff may recover for purely emotional harm in the following circumstances: 1) "where the defendant owes a direct duty of care to the plaintiff, the breach of which causes unreasonable risk of physical harm to the plaintiff"; 2) "where plaintiff witnesses injury to an immediate family member while in the zone of danger created by the defendant"; and 3) "under special circumstances, usually involving false death reports of family members." *Okoh v. Sullivan*, No. 10-2547, 2011 U.S. Dist. LEXIS 18524, at *17 (S.D.N.Y. Feb. 24, 2011) (citations omitted). Under the "direct duty" theory, the duty "must be specific to the plaintiff, and not some amorphous, free-floating duty to society." *Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996) (plaintiffs, who were accosted and briefly taken prisoner during a National Guard training exercise, could not state a claim for

NIED because the guardsmen had only a generalized duty to prevent unreasonable risks of harm to passers-by) (citations omitted).

Here, Plaintiff has presented evidence of psychological injury only (Concise Stmt ¶ 21), and her sole available theory of recovery for NIED is that defendants owed her a direct duty. Plaintiff, however, has not articulated the direct duty that the individual defendants, Padmini, Francis and Sousa owed to her. Moreover, assuming that Richline had a direct duty to take reasonable steps to remedy harassment, Plaintiff has not presented evidence that the Defendants breached that duty, as discussed more fully in the section on Title VII, above.

Additionally, under New York law, a defendant's breach of a direct duty will not render the defendant liable for negligent infliction of emotional distress unless the alleged conduct "unreasonably endanger[ed] a plaintiff's physical safety." *Gerson v. Giorgio Sant'Angelo Collectibles*, 671 N.Y.S. 2d 958, 176 Misc. 2d 388, 391 (1998). In the context of a claim involving sexual harassment in the workplace, the New York case history has "shown that short of sexual assault or battery, or threat thereof, there will be no cause of action for negligent infliction of emotional distress." *Id.*

Here, even if Plaintiff presented evidence that the Defendants breached a duty of care, she has also failed to establish that the breach unreasonably endangered her safety. She makes no allegations of sexual assault or battery. Moreover, even if Francis had posed a threat, a fact which Defendants dispute, the evidence shows that Plaintiff's workplace was permeated with security cameras, had several security personnel on duty, and screened employees entering secure areas, such as the Sample Line Department where Caban worked. (Concise Stmt ¶ 9).  In light of these security measures, Plaintiff cannot establish that Defendants endangered her safety.

Thus, summary judgment is appropriate on Plaintiff's NIED claim.

### 2.        Plaintiff Has Not Properly Alleged a Claim for Negligence.

Plaintiff's allegations in her negligence claim (her Seventh Cause of Action) are unclear. She avers that the Defendants were negligent, but does not specify any negligent behavior. Rather, the Complaint states that Defendants acted "purposefully to intimidate" her and that their conduct was "so outrageous . . . as to go beyond all possible bounds of decency." Thus, although Plaintiff has labeled her claim as one for negligence, carelessness and recklessness, it actually reads as a claim for intentional infliction of emotional distress (IIED). Defendants, however, are not certain regarding the nature of Plaintiff's allegations, nor do they know which Defendants she pursues the claim against. Moreover, Defendants noted the deficiencies in Plaintiff's pleading in their pre-motion letter but Plaintiff did not use her response letter to clarify matters. (Concise Stmt ¶ 48). Therefore, to the extent that Plaintiff still intends to pursue this claim and clarifies the basis for this claim, Defendants seek leave of the Court to address it more fully in their Reply.

### 3.        Richline Is Not Liable Under Respondeat Superior Because Plaintiff Has Failed to Establish That the Individual Defendants Engaged in Tortious Conduct, or That Their Conduct Was Within the Scope of Employment.

"Under the doctrine of respondeat superior, an employer may be vicariously liable for the tortious acts of its employees only if those acts were committed in furtherance of the employer's business and within the scope of employment." *NX v. Cabrini Med. Ctr.*, 97 N.Y.2d 247, 251, 765 N.E.2d 844, 739 N.Y.S.2d 348 (2002). "New York courts consistently have held that sexual misconduct and related tortious behavior arise from personal motives and do not further an employer's business, even when committed within the employment context." *Ross v. Mitsui*

*Fudosan*, 2 F. Supp. 2d 522, 531 (S.D.N.Y. 1998) (citations omitted).

Here, Plaintiff's respondeat superior claim fails for two reasons. First, as described above, Plaintiff cannot establish liability on her tort claims against the individual Defendants. Moreover, even if Plaintiff could prevail on one or both of her state law tort claims, there is nothing to indicate that the acts that form the basis of those claims were within the scope of employment. Thus, summary judgment is appropriate on Plaintiff's respondeat superior claim.

## CONCLUSION

For the above stated reasons, Defendants respectfully request that the Court grant their motion for summary judgment and accordingly enter judgment in their favor.

Respectfully Submitted,

 /s/ William Curphey
William E. Curphey
Curphey & Badger, P. A.
FBN 386741
Attorney for Defendants
795 Forest Road
Titusville, FL 32780
Tel: 727-726-8624
Fax: 727-793-6758

24   - DEFENDANTS' MOTION FOR SUMMARY JUDGMENT