UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NORMA CABAN,

    Plaintiff,

v.

RICHLINE GROUP, INC., et al.,

    Defendants.

---

10-CV-0559-ALC

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants hereby reply to Plaintiff's opposition to Defendants' Motion for Summary Judgment. As explained more fully below, Plaintiff has failed to raise any question of material fact that would preclude summary judgment on her claims.

**I.    PLAINTIFF HAS FAILED TO SUSTAIN HER TITLE VII CLAIMS.**

    **1.    Plaintiff's Allegations Against Sousa and Ramashan Are Time-Barred and Have Not Been Properly Exhausted Because They Are Not Related to the Conduct Described in Her NYSHDR Complaint.**

A court may consider "the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period" only if the untimely acts relate to the unlawful conduct that occurred within the statutory time period. *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75-76 (2d Cir. 2010); *see. e.g., Petrosino v. Bell Atlantic*, 385 F.3d 210, 214-216, 220 (2d Cir. 2004) (continuing violation where the evidence showed constant, gender-based hostility that permeated the work atmosphere). Similarly, a court may consider conduct not alleged in an EEOC charge only to the extent the conduct is "reasonably related" to the conduct described in

1   - DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT

the charge. *Butts v. New York Dept. of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993).

Here, Sousa and Ramashan's alleged sexual talk and Ramashan's alleged retaliation is not related to the charges in Plaintiff's NYSHDR complaint, which focused on Francis' conduct. (Concise Stmt ¶ 39). No evidence suggests that their pre-2007 sexual talk was discriminatory, or that it was connected to Francis' conduct, which commenced two years after Plaintiff joined Sousa and Ramashan in the Sample Line Department and allegedly involved sexual advances and indecent exposure. (Concise Stmt ¶ 7, 18, 19). Moreover, Plaintiff's NYSHDR complaint does not state that Ramashan was "complicit" in harassment; the charge only states that Ramashan walked with her to a room where Francis was allegedly hiding, which does not even describe harassment. (Concise Stmt ¶ 39). At most, the NYSHDR complaint indicates that Sousa and Ramashan were witnesses to, not participants in, some of Francis' conduct. *Id.* Moreover, although Plaintiff checked the box for retaliation in the NYSHDR complaint, she said nothing about Ramashan's alleged retaliation, although that conduct pre-dated the charge. (Concise Stmt ¶ 34, 39). Plaintiff's allegations against Sousa and Ramashan are therefore both untimely and not administratively exhausted.

    **2.    Plaintiff's Addenda To Her NYSHDR Complaint Do Not Exhaust Her Administrative Remedies for Her Claims Against Sousa and Ramashan.**

A complainant may amend an EEOC charge with an additional statement only if the statement either: 1) clarifies and amplifies allegations made in the original charge; or 2) alleges additional acts that constitute unlawful employment practices related to or growing out of the original charge. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 83 (2d Cir. 2001) (citing 29 C.F.R. § 1601.12(b)). Thus, an amendment cannot "enlarge the scope of the [EEOC] charge to encompass new unlawful employment practices." *Id.* at 83-84 (plaintiff could not amend her EEOC charge

to allege a new type of retaliation). Moreover, courts examine the similarities between the addendum's allegations and the original charge and whether the addendum prejudices the defendant. *Caravantes v. 53rd St. Partners, LLC*, No. 09-7821, 2012 U.S. Dist. LEXIS 3665, at *19-20 (S.D.N.Y. Jan. 11, 2012).

Here, Plaintiff's subsequent submissions to the NYSDHR are not proper amendments to the extent that they do not merely clarify her original allegations or add unlawful acts related to the original charge.[1] With regard to Ramashan, Plaintiff's submissions allege that, starting in March 2008, Ramashan engaged in rude behavior, name calling and flirting with Francis in response to Plaintiff's human resources complaint about Francis (Concise Stmt ¶ 34), whereas the NYSHDR complaint made no mention of this conduct, even though the complaint predates it. (Concise Stmt ¶ 39). Her submission concerning a January 2008 incident where Sousa engaged in sexual talk similarly seeks to enlarge the scope of the NYSHDR complaint, which made no mention of Sousa's involvement in the alleged harassment other than to claim an inadequate response to her human resources complaint concerning Francis. (Concise Stmt ¶ 17, 39, 56). Moreover, many of her submissions mention conduct that occurred before her March human resources complaint (Concise Stmt ¶ 34, 39, 40, 56-57, 62, 68), but was not mentioned in that complaint (Concise Stmt ¶ 25), so Richline did not have an opportunity to address it. Thus, Plaintiff's submissions seek to enlarge the scope of the investigation to encompass practices and people not implicated in the original charge, and have prejudiced the Defendants. As a result, Plaintiff's submissions do not save Plaintiff's time-barred allegations concerning Ramashan and Sousa's pre-2007 conduct, nor do they exhaust her administrative remedies for the claims against them.

---

[1] Although Plaintiff suggests that Defendants' motion purposely neglected to mention her submissions, Defendants had no knowledge of them before she filed her motion. (Concise Stmt ¶ 40, ¶ 179).

3   - DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT

3.       **There Is No Evidence That Ramashan Is a Supervisor for Title VII Purposes.**

Courts assessing whether an employee is a supervisor for purposes of Title VII liability must ask whether "the authority given by the employer to the employee enabled or materially augmented the ability of the latter to create a hostile work environment for his or her subordinates." *Mack v. Otis Elevator Co.*, 326 F.3d 116, 126 (2d Cir. 2003); *see also Harris v. Franziska Racker Ctrs., Inc.*, 340 F. Supp. 2d 225, 231 (N.D.N.Y. 2004) (an employee who oversaw only a "modest portion" of the plaintiff's work was not a supervisor for Title VII purposes). Here, the evidence merely shows that Ramashan occasionally oversaw the Sample Line Department in Sousa's absence. (Concise Stmt ¶ 6). No evidence indicates that Ramashan directed Plaintiff's daily work activities or that her fill-in role enabled the alleged retaliation. Thus, Ramashan did not act as Plaintiff's supervisor for Title VII purposes.

4.       **Plaintiff Has Failed to Establish That Sousa's Conduct Was Discriminatory.**

Inappropriate workplace conduct is not automatically sex discrimination "merely because the words used have sexual content or connotations." *Oncale v. Sundowner Offshore Servs.,* 523 U.S. 75, 80-81 (1998). Rather, a plaintiff must prove that the conduct at issue actually constituted discrimination." *Id.* at 81; *see also Raniola v. Bratton*, 243 F.3d 610, 621-622 (2d Cir. 2001) (plaintiff showed that facially neutral conduct was discriminatory where her supervisor previously made several public sexually derogatory statements); *Brennan v. Metropolitan Opera Ass'n*, 192 F.3d 310, 318-319 (2d Cir. 1999) (upholding summary judgment on hostile work environment claim in part because a supervisor's "rude" behavior was not evidence of discrimination where no evidence showed that he treated women more harshly than men).

Here, Plaintiff alleges that Sousa engaged in talk with sexual connotations in her presence. (Concise Stmt ¶ 17, 56). Plaintiff identifies only one specific instance of this behavior:

a conversation with a female co-worker in November 2007 or January 2008, before Plaintiff's March 2008 human resources complaint against Francis (Concise Stmt ¶ 56), which was not mentioned in that complaint (Concise Stmt ¶ 25). Apart from that, Plaintiff merely claims that Sousa made sexual comments or questions, without any information on the specific circumstances other than she told Sousa it made her uncomfortable. (Concise Stmt ¶ 17, 49, 50, 56). There is no evidence, however, that Sousa made any derogatory remarks about women in the workplace generally, or directed discriminatory statements to Plaintiff. Thus, Plaintiff has not presented evidence that Sousa's conduct had any discriminatory animus.[2]

### 5. Even If Sousa's Conduct Is Actionable, Richline Is Entitled to the *Farragher/Ellerth* Affirmative Defense.

"A supervisor's tangible employment action must be related to the alleged discriminatory harassment to preclude recourse to the *Farragher/Ellerth* affirmative defense." *Ferraro v. Kellwood Co.*, 440 F.3d 96, 102 (2d Cir. 2006); *see also Edrisse v. Marriott Int'l, Inc.*, 757 F. Supp. 2d 381, 388 (S.D.N.Y. 2010) (employer entitled to affirmative defense, despite that supervisor who made bigoted remarks played a role in discipline of the plaintiff, because Plaintiff failed to show that supervisor's harassment was related to the disciplinary action).

Here, Plaintiff argues that Richline is not entitled to the *Farragher/Ellerth* defense because Sousa participated in her termination. Plaintiff, however has failed to connect her termination to Sousa's alleged harassment. Plaintiff alleges Sousa's sexual talk continued for three years before her termination. (Concise Stmt ¶ 17, 44). Moreover, Plaintiff's July 2008 submissions to the NYSDHR contain the sole mention that Sousa engaged in sexual talk, and

---

[2] Plaintiff similarly has failed to show that Ramashan's name-calling and rudeness was sexually discriminatory. (Concise Stmt ¶ 17, 49, 50, 70-75). At most, Plaintiff's evidence suggests that Ramashan acted out of retaliation for Plaintiff's complaints against Francis because Ramashan and Francis were friends. (Concise Stmt ¶ 57, 70, 71, 73, 74). As a result, Ramashan's alleged conduct is relevant only to Plaintiff's retaliation claim, not her hostile work environment claim.

neither Richline nor Sousa received that document before Plaintiff was laid off. (Concise Stmt ¶ 17, 39, 40, 179). Finally, the evidence does not demonstrate that Sousa hired Rodriguez so that she could fire Plaintiff, nor does it indicate that Sousa reduced Plaintiff's workload. (Concise Stmt ¶ 44, 45). Thus, Richline is entitled to assert the *Farragher/Ellerth* defense.

Plaintiff further argues, however, that the *Farragher/Ellerth* defense is unavailing because Richline's anti-harassment policy was not properly disseminated and because she attempted to take advantage of the corrective opportunities available to her. Plaintiff attempts to make much of the fact that Richline did not provide a Spanish version of the employee manual, and that there are questions of fact concerning employee training and notices concerning sexual harassment (Concise Stmt ¶ 12, 16). Plaintiff, however, provides no evidence that she was unaware that Richline had a sexual harassment policy or that she was unable to make a complaint when she decided to do so. (Concise Stmt ¶ 13, 14, 15). That procedure directed employees to contact the next level of management in situations where an employee had a problem with an immediate supervisor. (Concise Stmt ¶ 11, 15). Plaintiff followed the procedure for her complaints against Francis and Ramashan. (Concise Stmt at 20, 22, 23, 25, 36, 38, 42, 47). She fails to explain why she failed to take advantage of that procedure to complain about Sousa.

Instead, Plaintiff argues that she did seek to address Sousa's conduct, but relies solely on evidence regarding Sousa's handling of her complaints concerning Francis and Ramashan. Courts, however "have uniformly rejected the notion that a failure adequately to remediate sexual harassment itself constitutes an act that may contribute to a hostile work environment claim." *Sui Chan v. New York City Transit Auth.,* No. 03-6239, 2004 U.S. Dist. LEXIS 16370, at *14-15, 2004 WL 1812818 (E.D.N.Y. July 19, 2004). Thus, although Sousa's handling of the complaints about Francis and Ramashan is relevant to Richline's liability for *Francis and*

*Ramashan's* conduct, it does not serve to impute *Sousa's* alleged harassment to Richline. *See id.* at *15 ("Failure … to remediate … is not itself sexual harassment."). Thus, assuming Sousa's alleged sexual talk constituted sexual harassment, no basis exists to impute her conduct to Richline because Plaintiff failed to take advantage of ample corrective opportunities.

      **6.**      **Plaintiff Cannot Impute the Alleged Coworker Harassment to Richline.**

Plaintiff argues that Richline is liable for Francis and Ramashan's conduct because management personnel were inadequately prepared to address her complaints and were insufficiently sympathetic. In support of her argument, Plaintiff cites *Whidbee v. Garzarelli Food Specialists, Inc.*, a case in which the harassment continued unabated after the plaintiffs complained to the general manager, who issued a verbal and written warning to the harasser, but also told the plaintiffs to deal with the harassment themselves and that they might have to leave if it continued. 223 F.3d 62, 67, 72-73 (2d Cir. 2000). Plaintiff further cites *Brown v. New York Department of Correctional Services*, where management did nothing to address the plaintiff's complaints and the harassment continued. 583 F. Supp. 2d 404, 419 (W.D.N.Y. 2008).

      Here, however, the facts are wholly different from the facts set out above. Although Plaintiff claims human resources was overworked, under-qualified and unsympathetic, she admits that human resources took prompt action in response to her March 2008 complaint--even though the complaint stated that the conduct had abated in January 2008. (Concise Stmt ¶ 23-25, 27-29, 32) She further admits that Richline's response included instructing Francis to avoid her work and lunch area, and following up with an investigation and reprimand. *Id.* More importantly, there is no evidence that Francis and Ramashan's conduct continued unabated after Plaintiff's complaints to human resources. Rather, all Plaintiff can show is that, after human resources was unable to substantiate most of her March 2008 complaint concerning Francis, she

complained about his pre-March 2008 conduct, or that she encountered Francis in the facility. (Concise Stmt ¶ 33, 38, 42, 43, 47, 52-62, 64-69, 77-79, 90-91, 97, 103, 104, 106-109). Similarly, Plaintiff has cited no specific instance of Ramashan's alleged retaliation after Sousa addressed her May 2008 complaint on that issue. (36, 37, 41, 43, 49-51, 57, 62, 70-76, 79, 83, 89, 102). Thus, the evidence shows that Richline took appropriate remedial action once it became aware of potential harassing and retaliatory conduct.

Plaintiff, however, argues that Francis and Ramashan's conduct can be imputed to Richline because Sousa had knowledge of it and failed to take action to stop it. Plaintiff correctly states that, to the extent Sousa had knowledge of the harassment, it will be imputed to Richline because Sousa had a duty, imposed by the employee manual, to address harassment. (Concise Stmt ¶ 11.) Plaintiff, however, has failed to show that, before March 2008, that Sousa knew that Plaintiff felt that she was a victim of sexual harassment. The manual directs employees to make sexual harassment complaints in writing. (Concise Stmt ¶ 11). More importantly, Plaintiff's evidence refers only to several, verbal complaints to Sousa that Francis' conduct made her "uncomfortable" or that she complained about incidents that were gender neutral, (Reply Concise Stmt at 20, 21, 53, 56, 62, 66, 67, 68, 83, 84, 87), but not to any specific pre-March 2008 complaint concerning harassment. *See Int'l Healthcare Exch., Inc. v. Global Healthcare Exch.*, 470 F. Supp. 2d 345, 357 (S.D.N.Y. 2007) ("[A]mbiguous complaints that do not make the employer aware of alleged discriminatory misconduct do not constitute protected activity.").

Moreover, when Plaintiff finally, in March 2008, explicitly stated she had been harassed in the preceding months, Sousa acted promptly by taking her to human resources. (Concise Stmt ¶ 20, 22). After that point, either human resources or Sousa responded to every one of Plaintiff's complaints with an investigation and response, even when Plaintiff complained about conduct

that was not overtly discriminatory. (Concise Stmt ¶ 23-25, 27-29, 32, 35, 36, 37, 38, 42, 43, 47, 80, 90, 91, 94, 98, 103, 104, 106, 107). Under these circumstances, neither Francis nor Ramashan's conduct can be imputed to Richline because the evidence shows that, once Sousa or human resources had knowledge of the alleged misconduct, they took appropriate remedial action. Plaintiff "was not entitled to have [Richline] redress the situation in her preferred manner -- she was only entitled to have the situation addressed in an manner that was reasonably calculated to end the harassment." *Durant v. A.C.S. State & Local Solutions, Inc.*, 460 F. Supp. 2d 492, 498-499 (S.D.N.Y. 2006).

### 7. Assuming Plaintiff Has Exhausted Administrative Remedies for Her Retaliation Claim, Plaintiff Cannot Make Out a Prima Facie Case.

"The rule is well-settled . . . that a party may not, in order to defeat a summary judgment motion, create a material issue of fact by submitting an affidavit disputing h[er] own prior sworn testimony." *Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.,* 925 F.2d 566, 572 (2d Cir. 1991). Here, Plaintiff testified in her deposition that Ramashan was the only person who retaliated against her. Concise Stmt ¶ 34, 41. Plaintiff, however, now contends that her later complaints to human resource, her NYSDHR complaint and her calls to the company hotline all prompted the retaliation and that Sousa and Francis participated in it.

Assuming, however, that the Court credits Plaintiff's new assertions concerning the alleged retaliation, her claim nonetheless fails because she has no evidence of any adverse employment action apart from her termination. "Petty slights, minor annoyances, and simple lack of good manners" are not materially adverse. *Burlington North. & Sante Fe. Ry. Co. v. White*, 548 U. S. 53, 68 (2006). Here, some of the incidents Plaintiff cites as support for her retaliation claim are irrelevant because they took place before her March 2008 complaint to human resources, which she states prompted the retaliation. (Concise Stmt ¶ 68-69). Plaintiff's

remaining citations to the record all involve name-calling teasing, sarcasm or rudeness from Ramashan (Concise Stmt ¶ 70-76, 149) and incidents where Plaintiff encountered Francis in the building and he glared at her or bumped into her (Concise Stmt ¶ 77-79). These do not amount to more than minor annoyances and thus do not support Plaintiff's retaliation claim.

Plaintiff, however, also argues that her termination was retaliatory. She cites insufficient evidence in support of this contention, however, and thus cannot support a prima facie case on that basis. (Concise Stmt ¶ 44, 45). Moreover, even if the Court find that the Plaintiff has presented evidence to suggest a causal connection between her complaints and her termination, Defendants maintain that she has not met her burden to establish pretext. (Concise Stmt ¶ 44). *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) ("The plaintiff must produce . . . sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not [retaliation] was the real reason for the employment action.") (citation omitted).

## II.     Plaintiff Has Failed to Sustain Her State Law Claims.

### 1.     Plaintiff Has Failed to Establish Primary Liability Under NYEL § 296(1).

Plaintiff argues that the individual defendants are liable under NYEL § 296, regardless of whether they had an ownership interest or the power to make personnel decisions, so long as they participated in the alleged discriminatory conduct. Plaintiff's argument fails to distinguish between primary (or employer) liability under § 296(1) and aiding and abetting liability under § 296(6). *See* N.Y. Exec § 296(1)(a), (6). Primary liability under § 296(1) requires evidence that the employer, or an employee with an ownership interest or the power to make personnel decisions, participated in or condoned discrimination. *Patrowich v. Chemical Bank*, 63 N.Y.2d 541, 542 (1984). Under § 296(6), an individual employee may be liable for aiding and abetting

discriminatory conduct, regardless of the employee's ownership status or authority. *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1306 (2d Cir. 1995) (abrogated on other grounds by *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *see also King v. Town of Wallkill*, 302 F. Supp. 2d 279, 295-296 (S.D.N.Y. 2004) (discussing the holdings in *Patrowich* and *Tomka*).

Here, Plaintiff argues that Sousa and Ramashan had sufficient authority such that their conduct can serve as a basis for primary liability under § 296(1). There is no evidence, however, that Ramashan had the power to make personnel decisions. (Concise Stmt ¶ 6). Moreover, Plaintiff's evidence fails to establish that Sousa had unilateral authority to make personnel decisions. (Concise Stmt ¶ 4).

Moreover, even if the Court finds that questions of fact remain regarding Sousa's authority, it should nonetheless grant summary judgment on Plaintiff's NYEL § 296(1) claim because the evidence fails to establish that Sousa or Richline encouraged, condoned or approved any discriminatory conduct. *See State Div. of Human Rights v. St. Elizabeth's Hosp.*, 66 N.Y.2d 684, 687, 487 N.E.2d 268 (1985). Plaintiff argues (without citation to the record) that questions of fact remain as to whether Richline or Sousa condoned or approved the alleged discrimination.[3] As discussed above in relation to Richline's liability for co-worker harassment, however, the evidence shows that Sousa took action once she was aware that Plaintiff felt she had been the victim of harassment and that, from that point on, human resources investigated and responded to every subsequent complaint it received from Plaintiff.

### 2.     Defendants Can Not Be Liable for Aiding and Abetting Under § 296(6) Absent Primary Liability Under § 296(1).

Plaintiff is wrong in her assertion that aiding and abetting liability under § 296(6) will lie in the absence of primary liability under § 296(1). Plaintiff seeks to support her contention by

---

[3] Plaintiff, somewhat confusingly, responds to Defendants' argument concerning primary liability under § 296(1) by discussing aiding and abetting liability under § 296(6).

citing to cases discussing whether an employee can be liable for aiding and abetting when his or her conduct serves as the predicate for primary liability. *See, e.g., Maher v. Alliance Mortg. Banking Corp.*, 650 F. Supp. 2d 249 (E.D.N.Y. 2009) (collecting cases). The Court, however, need not resolve the issue because no basis for primary liability exists, and, as a result none of the individual defendants are liable for aiding and abetting. *See, e.g., Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 363 (S.D.N.Y. 2007) ("[A]ccessory liability may only be found where a primary violation has been established.").

      **3.**    **Plaintiff Cannot Sustain Her Negligent Infliction of Emotional Distress (NIED) Claim Because She Has Failed to Show That Defendants Unreasonably Endangered Her Physical Safety.**

Plaintiff argues that her NIED claim survives because the Defendants breached their duty to protect her from sexual harassment and that, as a result, she feared for her personal safety. Plaintiff, however, misunderstands the standard for liability for NIED. It is not enough that she subjectively feared for her safety. Rather, she must show that defendants unreasonably endangered her physical safety. *Gerson v. Giorgio Sant'Angelo Collectibles,* 671 N.Y.S. 2d 958, 176 Misc. 2d 388, 391 (1998). Plaintiff has presented no such evidence. (Concise Stmt ¶ 9).

**III.**    **Plaintiff Has Not Raised Any Legitimate Discovery Dispute.**

Despite Plaintiff's effort to suggest Defendants improperly withheld documents, she has not established that Defendants failed to produce documents, or that she suffered any prejudice as a result. (Concise Stmt ¶ 183-186). Defendants, however, recognize that they are not able to prove that Plaintiff received the documents she claims they produced for the first time as exhibits in the instant motion. (Concise Stmt ¶ 186). Defendants accordingly withdraw those exhibits, and have noted the same in their concise statement replies. (Concise Stmt ¶ 12, 35, 37).

Finally, Plaintiff has no support for her argument that the Court should not consider the

errata sheets because she did not have an opportunity to cross examine the witnesses. "[W]hen a party amends his testimony under Rule 30(e), the original answer to the deposition questions will remain part of the record." *Podell v. Citicorp Diners Club*, 112 F.3d 98, 103 (2d Cir. 1997). (citation omitted). Thus, there is no basis to strike the Defendants' errata sheets, as they are legitimately part of the evidentiary record.

## CONCLUSION

For the above stated reasons, Defendants respectfully request that the Court grant their motion for summary judgment and accordingly enter judgment in their favor.


Respectfully Submitted,


 /s/ William Curphey
William E. Curphey
Curphey & Badger, P. A.
FBN 386741
Attorney for Defendants
795 Forest Road
Titusville, FL 32780
Tel: 727-726-8624
Fax: 727-793-6758


## CERTIFICATE OF SERVICE

I hereby certify a copy of the foregoing was duly served on this 23d day of March 2012, through the Court's CM/ECF system, to the following parties:

Carol L. Bizzarro, Law Offices
100 Marine Avenue, Ste. 6-G
Brooklyn, NY 11209-7219
(718)-833-8246
Email: clauriebizzarro@yahoo.com

 /s/ William Curphey
William E. Curphey

13   - DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT

Curphey & Badger, P. A.
FBN 386741
Attorney for Defendants
795 Forest Road
Titusville, FL 32780
Tel: 727-726-8624
Fax: 727-793-6758

14   - DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT